# EXHIBIT A.

## Plaintiff's Complaint

Electronically Filed
7/12/2023 4:45 PM
Steven D. Grierson
CLERK OF THE COURT

**COMPB**
Robert A. Rabbat, Esq.
Nevada Bar No. 12633
ENENSTEIN PHAM & GLASS LLP
11920 Southern Highlands Pkwy., Suite 103
Las Vegas, Nevada 89141
Telephone: (702) 468-0808
Facsimile: (702) 920-8228
rrabbat@epglawyers.com
*Attorneys for Plaintiff*

CASE NO: A-23-873903-B
Department 31

## EIGHTH JUDICIAL DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| HERER BRANDS INC., a Nevada corporation, <br><br> Plaintiff, <br><br> vs. <br><br> DANIEL HERER, an individual, and DOES 1 through 10, inclusive; ROE BUSINESS ENTITIES, 1 through 10, inclusive, <br><br> Defendants. | Case No. <br> Dept. No. <br><br> **COMPLAINT FOR:** <br><br> (1) BREACH OF FIDUCIARY DUTIES; <br> (2) TORTIOUS INTERFERENCE WITH CONTRACTUAL OBLIGATIONS; <br> (3) TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; <br> (4) BREACH OF CONTRACT; <br> (5) BUSINESS DISPARAGEMENT; <br> (6) CONVERSION; AND <br> (7) PRELIMINARY AND PERMANENT INJUNCTION <br><br> **JURY TRIAL DEMANDED** <br><br> [Exempt from Arbitration Pursuant to Rule 3(A) – (i) Damages in Excess of $50,000; and (ii) Equitable or Extraordinary Relief Requested] |

COMPLAINT

Plaintiff HERER BRANDS INC., a Nevada corporation ("HBI" or "Plaintiff"), by and through the law firm of Enenstein Pham & Glass, LLP, complain and allege against defendant DANIEL HERER ("Daniel" or "Defendant"), an individual, as follows:

## INTRODUCTION

1. Defendant Daniel Herer is one of the sons of Jack Herer -- sometimes called the "Emperor of Hemp" -- who was an influential cannabis rights activist and an advocate for the use of hemp as a renewable source of fuel, medicine, food, fiber, and paper. After Jack Herer's death in 2010, Daniel attempted to monetize his father's name.

2. Daniel began pursuing investors and convinced them to do business with him by leveraging the value of his father's name, embellishing his own supposed business skills, and by touting a number of highly profitable business opportunities. Unfortunately, due to and as a result of his misrepresentations and a series of bad decisions, these ventures incurred millions of dollars in debt, and the deals stalled or failed. Daniel, rather than deal with his problems directly and forthrightly, repeatedly reneged on agreements and continued to seek new investors and/or partners to payoff and replace the old ones, not unlike an ongoing Ponzi scheme.

3. In June of 2022, Daniel began pursuing experienced hemp and tech entrepreneur Dennis D'Alessio (the "HBI Investor Group"). Daniel, utilizing a pattern of deception similar to those employed in many scams, sought to gain D'Alessio's confidence, financing, and help for his businesses by promoting the value of his father's name, embellishing his own supposed business skills, touting a number of supposedly profitable business opportunities, and by blaming his past failures on being victimized by his former investors and partners.

4. After a period of negotiations, the HBI Investor Group agreed to form the business that would become HBI. Daniel and his family and related businesses (the "Daniel Group") would contribute Jack Herer-related intellectual property and other assets ("Jack Herer Assets"), and the HBI Investor Group would contribute money, management, and business expertise. Unfortunately, and as subsequent events described

below show, Daniel's hidden and actual agenda in this case, as in most swindles, was to patiently wait until he gained HBI's management's confidence and was entrusted with some control of funds, and then seek to enrich himself at the expense of his investors and partners.

5. But unlike Daniel's previous handshake deals benefiting Daniel, and marginalizing his investors and partners, the HBI Investor Group negotiated and entered into formal agreements establishing fair, rational, objective, and clearly defined relationships and duties. Furthermore, a legal entity was formed – Plaintiff HBI – in which Daniel holds a substantial ownership interest, to which Daniel owes fiduciary duties, and to which Daniel and his family contributed and assigned the Jack Herer Assets. In addition, Daniel entered into professional services agreements with HBI and was therefore duty bound to develop business relationships *for HBI*, creating further legal obligations not to serve his own interests over HBI's.

6. As alleged below, despite Daniel's legal and contractual obligations to HBI -- and the HBI Investor Group's investment of hundreds of thousands of dollars and many hundreds of hours of work -- Daniel reneged on his obligations to HBI and sought to serve his own individual interests by, *inter alia*: (1) thwarting and diverting HBI's contractual and business relationships and seeking to exploit them himself; (2) slandering HBI's reputation in the industry in an effort to justify his planned departure and looting of HBI's assets; and (3) engaging in theft, embezzlement, fraud, and/or recklessness with respect to property entrusted to him for HBI's benefit.

7. Daniel caused confusion and diverted attention from his wrongful conduct and the deceptive behavior he used to victimize his investor partners by using crocodile tears, ploys for sympathy, and claims of emotional and physical pain. Daniel's deceitful and self-serving conduct, and his manufacturing and broadcasting of false claims of persecution and mistreatment in an attempt to justify and conceal that conduct, constitute an extreme and inexcusable betrayal of trust. HBI seeks by this action only to confirm Daniel's obligations to HBI and to remedy the damage done.

## PARTIES

8. Plaintiff Herer Brands, Inc. is a Nevada Corporation, with its principal place of business in Las Vegas, Nevada.

9. Defendant Daniel Herer is an individual who is, and at all times mentioned herein has been, a resident of the County of Los Angeles, in the State of California.

10. Plaintiff does not presently know the names and capacities of the individual defendants sued herein as Does 1-10, inclusive, and the business entity Defendants sued herein as Roe Business Entities, 1-10, inclusive. Plaintiff will seek leave of court to amend this Complaint to allege the true names and capacities of these defendants as soon as Plaintiff ascertains them. Each of the Doe and Roe Business Entities defendants is responsible in some manner for the occurrences and damages herein alleged.

11. Upon information and belief, at all times herein alleged, each of the defendants named in this Complaint was the agent, employee, partner, co-venturer, and/or co-conspirator of each of the remaining defendants, and, in doing the things herein alleged, was acting within the course and scope of such agency, employment, partnership, venture, and/or conspiracy, each with the permission, consent, or ratification of each of the other defendants.

## JURISDICTION AND VENUE

12. The District Court of Nevada has subject matter jurisdiction over this matter because this action concerns issues of Nevada law and, in particular, rights and duties relating to a Nevada corporation.

13. The District Court of Clark County has subject matter jurisdiction over this action because some of the matters at issue took place in Clark County, Nevada.

14. The District Court of Clark County has personal jurisdiction over Defendant because he has availed himself of the protections of Nevada law; he holds equity and beneficial interests in Plaintiff HBI which is an entity formed under and governed by Nevada law; entered into an professional services agreement which by its terms is governed by Nevada law and which selects Clark County, Nevada, as the venue

for dispute resolution; and disparaged Plaintiff in Nevada and committed other intentional torts against it, causing Plaintiff foreseeable damage in the State of Nevada.

15. The amount in controversy exceeds $50,000.00.

## GENERAL ALLEGATIONS

A. **HBI is Formed to Monetize the Jack Herer Assets and to Continue the Advocacy of Cannabis Rights and Benefits Jack Herer Started**

16. For years after his death, Jack Herer's heirs and related businesses pursued numerous business ventures in efforts to monetize the Jack Herer Assets. In June 2022, Daniel began pursuing a business relationship with the HBI Investor Group.

17. Between June and September of 2022, the Daniel Group entered into a series of agreements with the HBI Investor Group under which they agreed to a joint venture to monetize the Jack Herer Assets and continue the advocacy efforts and compassionate care cannabis mission of Jack Herer's legacy.

18. First, the Daniel Group and the HBI Investor Group entered into a Binding Letter of Intent effective July 13, 2022 ("BLOI") establishing the general terms of the venture. As relevant here, under the terms of the BLOI, the parties agreed that a new company would be formed to which the Daniel Group would contribute the Jack Herer Assets and the HBI Investor Group would contribute capital, infrastructure, and business and management services. The BLOI opened a 90-day period for due diligence and negotiation of more detailed terms, but it expressly and repeatedly states that it was a legally binding agreement and established fiduciary duties among and to the parties.

19. The parties to the BLOI began moving forward with the venture while negotiating more detailed terms. For example, beginning in July 2022, the HBI Investor Group contributed substantial funds and resources to pay for and market goods sold under The Jack Herer brand, and to mobilize and hire additional personnel to advance the interests of the business and to begin work to raise awareness of the Jack Herer Foundation.

20. Also pursuant to the terms of the BLOI, Daniel negotiated and entered into a professional services agreement ("PSA") under which Daniel would be paid to act as the Chief Business Development Officer for the venture. As part of the agreement, Daniel was to form a separate entity to execute a written agreement and to perform these services. Although Daniel failed to form the entity, the parties to the PSA otherwise began performing under it and the HBI Investor Group contributed substantial sums to pay Daniel for his services and to reimburse his expenses.

21. During the due diligence period, the HBI Investor Group determined that there were issues with the Jack Herer Assets that negatively impacted their value, and that the venture's business prospects were not as strong as Daniel had represented. As a result, the parties to the BLOI negotiated and agreed to adjustments in the HBI Investor Group's investment and equity share in the venture. With these changes and some clarifications of language, the parties agreed upon and entered into a Definitive Asset Merger Agreement made effective as of September 23, 2022 ("DAMA") restating their agreements in the BLOI as modified and/or clarified.

22. As required by the BLOI and DAMA, the Daniel Group entered into an Assignment Agreement effective as of September 20, 2022 ("Assignment Agreement") assigning their rights in the Jack Herer Assets to the new company being formed to carry the venture forward, HBI. Daniel and his family executed the Assignment Agreement on their own behalves and on behalf of their associated entities, and Daniel executed the Assignment Agreement on behalf of HBI as its President.

23. As also required by the terms of the BLOI and DAMA, the HBI Investor Group continued to contribute capital, infrastructure, and business and management services. For example, the HBI Investor Group paid and/or reimbursed Daniel for Daniel's professional services, legal fees for ongoing litigation involving some of the trademarks conveyed to HBI, costs and fees related to HBI's corporate filings, as well as substantial time and money for consultants, trade shows, pursuing licensing opportunities, and purchasing product inventory and packaging.

B. **HBI's Efforts Begin Paying Off**

24. HBI moved forward as planned, with all of its agents at least *appearing* to be working together to advance its mission. Initially, Daniel worked in concert with HBI's other agents by pursuing potential licensing and other business opportunities for HBI and was paid for doing so. HBI's efforts began bearing fruit, including the formation of highly lucrative contracts and the development of potentially profitable business relationships, which would -- if allowed to develop -- result in substantial benefits to HBI, the Jack Herer Foundation, and to Daniel and the other Herer heirs.

25. For example, HBI pursued a licensing relationship for sales of cannabis under the Jack Herer marks in the State of Arizona. These efforts resulted in an Intellectual Property License Agreement effective March 13, 2023, between a wholly-owned subsidiary of HBI, Universal Brands, Inc., and a reputable Arizona business partner ("Arizona Contract"). Under the Arizona Contract, HBI was to receive substantial revenue over at least a five year term.

26. Further, as the successor in interest to an existing Intellectual Property License Agreement effective March 4, 2022 with a well-established Colorado business partner ("Colorado Contract"), HBI devoted substantial time and effort to renegotiating the Colorado Contract and resolving potential issues with it, and these efforts were approaching fruition.

27. HBI was also the successor in interest to an existing Intellectual Property License Purchase Agreement effective February 11, 2019, for assignment of JACK HERER LEGACY and related trademarks ("Legacy Contract"). HBI has devoted substantial time and effort in identifying and negotiating potential issues with the contract and clarifying the associated payments and money due in order to enforce the transfer of the trademarks to HBI.

///

C. **Daniel Advances His Own Interests Over HBI's, and Spreads Slanderous Falsehoods About HBI in an Effort to Justify His Self-Serving Conduct**

28. Unbeknownst to HBI, beginning at least as early as October 2022, Daniel began publically disparaging HBI and its agents to cannabis industry insiders in an apparent effort to establish a justification for his planned departure from HBI and attempted looting of its assets. Specifically, at an industry conference in Mexico City, Mexico, Defendant stated to the Founder and Executive Director of the Marijuana Industry Trade Association ("MITA"), Demitri Downing, that HBI and its agents had taken advantage of him, had not been honest with him, and were not capable of operating the business, thereby disparaging HBI's reputation in the industry for honesty and professional competence.

29. In mid-November, 2022, Daniel repeated and intensified his slanderous statements about HBI and its agents to Mr. Downing at an industry event in Las Vegas, Nevada.

30. Shortly after Daniel's attendance at the industry event in Las Vegas, he notified HBI that a burglary had occurred at a third party's facility that he had chosen to use for product packaging and manufacturing services. Daniel had been authorized to purchase a quantity of legal cannabis for a licensee to resell and was entrusted with funds for the purchase. Daniel, unbeknownst to HBI or the licensee, delivered the legal cannabis to an unlicensed facility and shortly thereafter claimed most of the cannabis had been stolen from the facility. An investigation of Daniel's actions was initiated by HBI for mismanagement and/or embezzlement relating to his handling of the purchase and sale of the cannabis. As a result of HBI's investigation, it was determined that Daniel was reckless and/or engaged in a conspiracy from which he benefited, that resulted in loss of the cannabis, damages to the company, as well as potential violations of applicable laws.

31. On January 19, 2023, shortly after Daniel was confronted with the conclusions of the investigation, Daniel sent an email to HBI fabricating numerous complaints about HBI and attempting to use them as grounds for dissolving the venture.

32. Although Daniel did not disclose it to HBI at the time, on information and belief, Daniel was in communication at this time with representatives of the Arizona entity that would later enter into the Arizona Contract with HBI. Daniel did not disclose this opportunity to HBI at the time he attempted to depart.

33. The following day, January 20, 2023, D'Alessio responded to Daniel's email for HBI and expressed his surprise at Daniel's accusations and request, and explained why it was not justified or possible.

34. That very same day, HBI learned of the Arizona entity's interest in entering into a licensing contract for sales of cannabis bearing the Jack Herer mark in Arizona. HBI then negotiated and finalized the Arizona Contract as alleged above.

35. In March 2023, HBI's agents met with Daniel repeatedly in efforts to resolve his stated concerns. Daniel reassured HBI that the problems were resolved and that he would fulfill his obligations.

36. But at the same time Daniel was ostensibly agreeing to fulfill his obligations and move forward with HBI's mission, on information and belief, he was surreptitiously seeking self-dealing opportunities to enrich himself, and new investors and/or partners to replace the HBI Investors Group. He was also further intensifying his campaign of disparagement and claims of being victimized by the HBI Investors Group in an apparent effort to justify his imminent departure. Specifically, Daniel again approached Mr. Downing (and likely others) at an industry conference in Spain, and repeated his prior false statements about HBI and its agents.

37. Despite Daniel's assurances after his meetings with HBI, on March 31, 2023 -- through the attorney who represented HBI in trademark disputes -- Daniel announced that he "would no longer be participating in the venture."

38. In the coming weeks, HBI learned that Daniel was systematically approaching the entities with which HBI had business relationships and making false statements to them in order to induce them to terminate dealings with HBI and enter into negotiations with him. On information and belief, these false statements included that HBI did not have the right to license and/or use the Jack Herer Assets, that Daniel had no legal obligations to HBI, that HBI was not competent to do business, and that HBI had breached agreements with him and treated him unfairly.

39. As a result, HBI has lost numerous contractual and economic relations, including the Arizona Contract, the Colorado Contract, and the Legacy Contract.

## FIRST CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTIES

### (Against All Defendants)

40. Plaintiff repeats and re-alleges herein by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

41. As a result of the relationships of trust and confidence and the agreements alleged above, Daniel owed fiduciary duties to HBI.

42. As alleged further above, Daniel breached his fiduciary duties by, *inter alia*, publically disparaging and/or slandering HBI to the cannabis industry, seeking to sever HBI's contractual and economic relationships and benefit from them himself, concealing prospective opportunities from HBI, telling third parties that HBI did not have rights in the Jack Herer Assets, and, on information and belief, participating in the theft of property purchased for HBI's benefit, and/or acting recklessly or negligently with respect to such theft.

43. As a direct and proximate result of Daniel's conduct, HBI was damaged in an amount in excess of the jurisdictional minimum of this Court.

44. Daniel's actions were willful, wanton, or in reckless disregard for HBI's rights and were done with malice, oppression, and fraud, warranting punitive damages.

///

## SECOND CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH CONTRACTUAL OBLIGATIONS

### (Against All Defendants)

45. Plaintiff repeats and re-alleges herein by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

46. As alleged further above, one or more valid and existing contracts existed between HBI and third parties, including the Arizona Contract, the Colorado Contract, and/or the Legacy Contract.

47. As alleged further above, Daniel was aware of these contracts.

48. As alleged further above, Daniel committed intentional acts intended and/or designed to disrupt the contractual relationships and had a specific purpose and/or motive to injure HBI through his tortious interference.

49. As alleged further above, the contractual relationships have been disrupted in that the other parties to the contracts have refused to perform because of Daniel's false statements to its representatives including, *inter alia*, that HBI does not have rights in the Jack Herer Assets.

50. As a direct and proximate result of Daniel's conduct, HBI was damaged in an amount in excess of the jurisdictional minimum of this Court.

51. Daniel's actions were willful, wanton, or in reckless disregard for HBI's rights and were done with malice, oppression, and fraud, warranting punitive damages.

## THIRD CAUSE OF ACTION

## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against All Defendants)

52. Plaintiff repeats and re-alleges herein by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

53. As alleged further above, one or more prospective economic relationships existed between HBI and third parties, including at least the relationships involving the Arizona Contract, the Colorado Contract, and the Legacy Contract.

54. As alleged further above, Daniel was aware of these relationships.

55. As alleged further above, Daniel committed intentional acts intended and/or designed to disrupt the economic relationships and had a specific purpose and/or motive to injure HBI through his tortious interference.

56. As alleged further above, the economic relationships have been disrupted in that the other parties to the relationships have refused to proceed because of Daniel's false statements to its representatives including, *inter alia*, that HBI does not have rights in the Jack Herer Assets.

57. As alleged further above, Daniel was neither privileged nor justified in disrupting these relationships.

58. As a direct and proximate result of Daniel's conduct, HBI was damaged in an amount in excess of the jurisdictional minimum of this Court.

59. Daniel's actions were willful, wanton, or in reckless disregard for HBI's rights and were done with malice, oppression, and fraud, warranting punitive damages.

## FOURTH CAUSE OF ACTION

## BREACH OF CONTRACT

### (Against All Defendants)

60. Plaintiff repeats and re-alleges herein by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

61. As alleged further above, HBI and Daniel entered into Professional Services Agreements ("PSA").

62. As alleged further above, HBI performed its obligations under the PSA by, *inter alia*, paying Daniel for services.

63. As alleged further above, Daniel breached his obligations under the PSA by, *inter alia*, publically disparaging and/or slandering HBI to the cannabis industry, seeking

to sever HBI's contractual and economic relationships and benefit from them himself, concealing prospective opportunities from HBI, and/or telling third parties that HBI did not have rights in the Jack Herer Assets.

64. As a direct and proximate result of Daniel's conduct, HBI was damaged in an amount in excess of the jurisdictional minimum of this Court.

### FIFTH CAUSE OF ACTION
### BUSINESS DISPARAGEMENT
**(Against All Defendants)**

65. Plaintiff repeats and re-alleges herein by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

66. As alleged further above, Daniel made false and disparaging statements about HBI.

67. As alleged further above, these statements were not privileged and were published to third parties in HBI's business community.

68. As alleged further above, Daniel published these statements with the intent to cause monetary harm to HBI, and/or Daniel knew the statements were untrue or had a high disregard for the statements' truth.

69. As a direct and proximate result of Daniel's conduct, HBI was damaged in an amount in excess of the jurisdictional minimum of this Court.

70. Daniel's actions were willful, wanton, or in reckless disregard for HBI's rights and were done with malice, oppression, and fraud, warranting punitive damages.

### SIXTH CAUSE OF ACTION
### CONVERSION
**(Against All Defendants)**

71. Plaintiff repeats and re-alleges herein by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

72. As alleged further above, HBI authorized Daniel to purchase a certain quantity of legal cannabis for the benefit of HBI.

73. As alleged further above, on information and belief, Daniel converted this property through wrongful acts inconsistent with HBI's rights, and/or conspired with third parties in doing so.

74. As a direct and proximate result of Daniel's conduct, HBI was damaged in an amount in excess of the jurisdictional minimum of this Court.

75. Daniel's actions were willful, wanton, or in reckless disregard for HBI's rights and were done with malice, oppression, and fraud, warranting punitive damages.

### SEVENTH CAUSE OF ACTION

### PRELIMINARY AND PERMANENT INJUNCTION

### (Against All Defendants)

76. Plaintiff repeats and re-alleges herein by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

77. As a result of Daniel's conduct alleged above, HBI is suffering irreparable harm that cannot be fully remedied by monetary damages and the balance of hardships favors issuance of a preliminary injunction.

78. HBI therefore respectfully requests issuance of preliminary and permanent injunctions enjoining Daniel and all agents and/or entities associated with him from competing against HBI, disparaging HBI and/or its agents, and/or seeking to license or otherwise exploit the Jack Herer Assets.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1. **On the FIRST CAUSE OF ACTION for breach of fiduciary duties:**
   a) Compensatory damages in an amount to be proven at trial;
   b) Punitive damages in an amount to be proven at trial;
   c) For prejudgment and post-judgment interest; and
   d) Such other relief as the Court deems proper.

///

2.    On the SECOND CAUSE OF ACTION for tortious interference with contractual obligations:

2.  On the SECOND CAUSE OF ACTION for tortious interference with contractual obligations:
    a) Compensatory damages in an amount to be proven at trial;
    b) Punitive damages in an amount to be proven at trial;
    c) For prejudgment and post-judgment interest; and
    d) Such other relief as the Court deems proper.

3.  On the THIRD CAUSE OF ACTION for tortious interference with prospective economic advantage:
    a) Compensatory damages in an amount to be proven at trial;
    b) Punitive damages in an amount to be proven at trial;
    c) For prejudgment and post-judgment interest; and
    d) Such other relief as the Court deems proper.

4.  On the FOURTH CAUSE OF ACTION for breach of contract:
    a) Compensatory damages in an amount to be proven at trial;
    b) For prejudgment and post-judgment interest; and
    c) Such other relief as the Court deems proper.

5.  On the FIFTH CAUSE OF ACTION for business disparagement:
    a) Compensatory damages in an amount to be proven at trial;
    b) Punitive damages in an amount to be proven at trial;
    c) For prejudgment and post-judgment interest; and
    d) Such other relief as the Court deems proper.

6.  On the SIXTH CAUSE OF ACTION for conversion:
    a) Compensatory damages in an amount to be proven at trial;
    b) Punitive damages in an amount to be proven at trial;
    c) For prejudgment and post-judgment interest; and
    d) Such other relief as the Court deems proper.

7.  On the SEVENTH CAUSE OF ACTION for injunctive relief:
    a) Issuance of preliminary and permanent injunctions enjoining Daniel

Case 2:23-cv-01235-JCM-BNW   Document 1-2   Filed 08/07/23   Page 16 of 18

15
COMPLAINT

and all agents and/or entities associated with him from competing against HBI, disparaging HBI and/or its agents, and/or seeking to license or otherwise exploit the Jack Herer Assets; and

    b)    Such other relief as the Court deems proper.

Dated: July 12, 2023

**ENENSTEIN PHAM & GLASS**

By: _____
Robert A. Rabbat
Nevada Bar Number 12633
*rrabbat@epglawyers.com*
11920 Southern Highlands Pkwy., Suite 103
Las Vegas, Nevada 89141
Telephone: (702) 468-0808
Facsimile: (702) 920-8228
*Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for all claims and causes of action for which a right to trial by jury exists.

Dated: July 12, 2023

**ENENSTEIN PHAM & GLASS LLP**

By: _____
Robert A. Rabbat
Nevada Bar Number 12633
rrabbat@epglawyers.com
11920 Southern Highlands Pkwy., Suite 103
Las Vegas, Nevada 89141
Telephone: (702) 468-0808
Facsimile: (702) 920-8228
*Attorneys for Plaintiff*